930 A.2d 442 (2007)
395 N.J. Super. 571
OFP, L.L.C., Plaintiff-Appellant,
v.
STATE of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 2007.
Decided August 10, 2007.
*444 Brian J. Mulligan, Trenton, argued the cause for appellant (Sterns & Weinroth, attorneys; Mr. Mulligan and Jason T. Stypinski, on the briefs).
Dean Jablonski, Deputy Attorney General, argued the cause for respondent (Stuart Rabner, Attorney General, attorney; Patrick DeAlmeida and Nancy Kaplen, Assistant Attorneys General, of counsel; Mr. Jablonski and Brian Weeks, Deputy Attorney General, on the briefs).
Before Judges SKILLMAN, LISA and HOLSTON, JR.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
In August 2004, the Governor signed into law the Highlands Water Protection and Planning Act (the Highlands Act), N.J.S.A. 13:20-1 to -35. This legislation established a state agency, called the Highlands Water Protection and Planning Council (Highlands Council), N.J.S.A. 13:20-4, which was delegated responsibility for land use planning in the Highlands Region, consisting of nearly 800,000 acres in eighty-eight municipalities located in parts of Morris, Sussex, Passaic, Bergen, Warren, Hunterdon and Somerset Counties, N.J.S.A. 13:20-7(a). The Highlands Act creates two areas within the Region: a *445 preservation area, in which further development is strictly regulated, and a planning area, in which development consistent with the Act's goals is encouraged. See N.J.S.A. 13:20-7(b),(c); N.J.S.A. 13:20-10(b),(c). The Highlands Act delegates responsibility to the Department of Environmental Protection (DEP) to establish a Highlands permitting review program for all major development in the preservation area. N.J.S.A. 13:20-31 to -35.
Plaintiff OFP is the owner of a ninety-three acre tract of undeveloped land in Washington Township, Morris County. This tract is located within the preservation area in the Highlands Region.
In December 1999, the Washington Township Planning Board granted OFP's predecessor in title preliminary major subdivision approval to subdivide the property into twenty-six lots for residential development. This approval was made subject to various conditions, which OFP's predecessor challenged by an action in lieu of prerogative writs. OFP substituted as plaintiff after it acquired the property. This action resulted in an order striking some conditions of the preliminary subdivision approval and modifying others.
OFP also brought an action against the Washington Township Department of Public Works to obtain approval for construction of a water main required to provide water service to the proposed development. In October 2003, this action resulted in a settlement under which the parties agreed on the water main's location. In addition, OFP obtained various permits and approvals from the DEP, including a stream encroachment permit and authorization for limited encroachments into wetlands.
In February 2004, OFP applied to the DEP pursuant to the Safe Drinking Water Act, N.J.S.A. 58:12A-1 to -37, for a potable water supply permit to construct a water works. On March 22, 2004, the DEP returned the application as incomplete. As a result, OFP's application for a potable water supply permit was still pending when the bill that became the Highlands Act was introduced in the Legislature on March 29, 2004. OFP subsequently corrected the deficiencies in its application, and the DEP issued the required potable water supply permit on May 14, 2004. After the permit was issued, the Legislature enacted the Highlands Act, and the Governor signed the bill into law on August 10, 2004.
The Highlands Act only exempts from its provisions a major Highlands development project that obtained preliminary subdivision or other required approval under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -129, and required approvals from the DEP before the Act was introduced in the Legislature on March 29, 2004. N.J.S.A. 13:20-28. Therefore, OFP's proposed subdivision is subject to the Highlands permitting review program provided under N.J.S.A. 13:20-33 because OFP did not obtain a potable water supply permit until after the Act was introduced.
On October 18, 2004, OFP's counsel sent a letter to the Commissioner of the DEP requesting a meeting "to discuss the [Highlands Act's] application to the [OFP] project and the potential for an exemption from the Act." On November 12, 2004, a supervising environmental specialist in the Highlands Unit of the Bureau of Watershed Regulation advised OFP's counsel that the DEP had not yet received an application from OFP for a "Highlands Applicability Determination."
On December 14, 2004, OFP's counsel sent another letter to the DEP which asserted that the supervising environmental specialist had advised him there was no "statutory exemption" available for OFP's *446 residential subdivision, and therefore, the property is subject to the Highlands Act. The letter stated that "OFP clearly had an investment backed expectation of developing this property and is left with no choice but to challenge the legality of the Act on its face and as it applies to this project." The letter concluded that in view of the supervising environmental specialist's expression of opinion that the subdivision was not exempt from the Act, OFP had "exhausted administrative remedies and will proceed with our legal remedies."
Before the DEP responded to the December 14th letter, OFP filed this action challenging the constitutionality of the Highlands Act as applied to its property. The complaint asserted that the Act "operates as a bar to development as otherwise permitted by law and results in a taking of OFP's property without compensation," in violation of the Fifth Amendment to the United States Constitution and Article I, paragraph 20, of the New Jersey Constitution. Based on the alleged retroactive application of the Act to OFP's subdivision approval, the complaint also asserted that the Act violates the equal protection and due process guarantees of the United States and New Jersey Constitutions and results in a "manifest injustice."
The DEP filed a motion pursuant to Rule 4:6-2(e) to dismiss the complaint for failure to state a claim upon which relief may be granted. The trial court converted the motion to a motion for summary judgment.
In a comprehensive written opinion, the trial court rejected OFP's challenges to the constitutionality of the Highlands Act and dismissed its complaint. The court noted that the Act "provides protection to property owners through an administrative process to lessen the effect of [the] land restrictions" it imposes. This administrative process includes provisions for hardship waivers. In light of the availability of this administrative process, the court dismissed OFP's "constitutional challenge to the Act as applied to [its] property . . . on the procedural grounds of failure to exhaust administrative remedies[.]" The court also concluded that the limited retroactive application of the Act to development projects that received administrative approvals during the intervening period between the Act's introduction in the Legislature and final enactment did not violate OFP's due process and equal protection rights or result in a manifest injustice. OFP subsequently filed a motion for reconsideration, which the court denied.
On appeal, OFP presents the following arguments:
I. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CHALLENGES TO THE HIGHLANDS ACT AS UNRIPE BECAUSE THERE ARE NO ADMINISTRATIVE REMEDIES AVAILABLE.
II. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S MANIFEST INJUSTICE CLAIM.
III. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CHALLENGES TO THE HIGHLANDS ACT BECAUSE THERE ARE MATERIAL FACTS IN DISPUTE AS TO THE DESIGNATION OF APPELLANT'S PROPERTY WITHIN THE PRESERVATION AREA.[1]
*447 We reject these challenges to the validity of the Highlands Act as applied to OFP's property and affirm the summary judgment dismissing its complaint.

I
OFP's primary challenge to the constitutionality of the Highlands Act is that enactment of this legislation resulted in a taking of its property.
It is now firmly established that governmental actions that do not involve governmental occupancy or encroachment upon private land may "still affect and limit its use to such an extent that a taking occurs." Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 2457, 150 L.Ed.2d 592, 607 (2001). "In Justice Holmes' well known . . . formulation, `while property may be regulated to a certain extent, if a regulation goes too far, it will be recognized as a taking.'" Ibid. (quoting Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326 (1922)).
It is thus clear that "a regulation which `denies all economically beneficial or productive use of land' will require compensation under the Taking Clause [of the Fifth Amendment]." Ibid. (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798, 813 (1992)); accord Gardner v. New Jersey Pinelands Comm'n, 125 N.J. 193, 205, 593 A.2d 251 (1991). It is less clear whether a taking occurs "[w]here a regulation places limitations on land that fall short of eliminating all economically beneficial use[.]" Palazzolo, supra, 533 U.S. at 617, 121 S.Ct. at 2457, 150 L.Ed.2d at 607. In that situation, the determination whether there has been a taking "depend[s] on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." Ibid.; see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).
The protections against governmental taking of private property without just compensation provided by article I, paragraph 20 of the New Jersey Constitution are "in general conformity" with the protections recognized under the United States Constitution. Gardner, supra, 125 N.J. at 205, 593 A.2d 251; see also Bernardsville Quarry, Inc. v. Borough of Bernardsville, 129 N.J. 221, 231, 608 A.2d 1377 (1992); Littman v. Gimello, 115 N.J. 154, 161, 557 A.2d 314, cert. denied, 493 U.S. 934, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); United Prop. Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J.Super. 1, 29, 777 A.2d 950 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001).
Because the determination whether a governmental regulation limiting the use of land has resulted in a taking depends on the "complex of factors" identified in Palazzolo, the agency responsible for such regulation must "arrive[] at a final, definitive position regarding how it will apply the regulations at issue to the particular *448 land in question" before a court can decide whether a taking has occurred. Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126, 141 (1985). Stated another way, "[a] court cannot determine whether a regulation has gone `too far' unless it knows how far the regulation goes." MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285, 294 (1986). As explained in Palazzolo:
[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation. Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established.
[533 U.S. at 620-21, 121 S.Ct. at 2459, 150 L.Ed.2d at 609.]
This court has also required exhaustion of available administrative remedies before a landowner may maintain a regulatory taking claim in a judicial forum. In United Savings Bank v. State, Department of Environmental Protection, 360 N.J.Super. 520, 823 A.2d 873 (App.Div.), certif. denied, 177 N.J. 574, 832 A.2d 324 (2003), a landowner obtained all necessary municipal permits for a development before enactment of the Freshwater Wetlands Protection Act (FWPA), N.J.S.A. 13:9B-1 to -30. After the DEP informed the landowner it had to apply for a wetlands permit before filling wetlands and constructing additional homes, the landowner refused and instead filed an inverse condemnation action. We affirmed dismissal of the landowner's complaint on the ground that it had failed to exhaust administrative remedies. Id. at 525-28, 823 A.2d 873. In rejecting the landowner's assertion that it was not required to submit an application for a wetlands permit before filing suit because denial was a "foregone conclusion," we stated:
Whatever the parameters of the so-called doctrine of futility as an exception to the doctrine of exhaustion of administrative remedies, that exception does not come into play before an applicant for administrative permission even files the request, at least not where the agency has some discretion to grant that request.
[Id. at 526, 823 A.2d 873.]
In addition, we stated, citing Palazzolo, that even though administrative officials had made preliminary statements indicating that an application for a wetlands permit would be denied, "a landowner must give the land-use authority an opportunity to exercise its discretion." Ibid. We also observed:
While a full scale development may not have been possible [under the regulatory provisions of the FWPA], perhaps a smaller project was feasible through some combination of upland use and limited filling of wetlands. Of course, we will never know because [the landowner] did not even enter the permitting process when it decided to give up all hope.
[Id. at 527, 823 A.2d 873.]
We concluded, in accordance with the previously discussed decisions of the Supreme Court, that "[o]nly when a permit is denied *449 and the effect of the denial is to prevent `economically viable' use of the land in question can it be said that a taking has occurred." Id. at 527-28, 823 A.2d 873 (quoting MHF Holding Co. v. New Jersey Dep't of Envtl. Prot., 314 N.J.Super. 87, 97, 713 A.2d 1096 (Law Div.1997)); see also Griffith v. State, Dep't of Envtl. Prot., 340 N.J.Super. 596, 610-11, 775 A.2d 54 (App.Div.), certif. denied, 170 N.J. 85, 784 A.2d 718 (2001), cert. denied, 534 U.S. 1161, 122 S.Ct. 1171, 152 L.Ed.2d 115 (2002).
The Highlands Act establishes an administrative procedure for determination of any claim that its regulatory provisions have resulted in a taking. N.J.S.A. 13:20-33(a) provides in pertinent part that "[t]he [DEP] shall establish a Highlands permitting review program to provide for the coordinated review of any major Highlands development in the preservation area based upon the rules and regulations adopted by the [DEP,]" and N.J.S.A. 13:20-33(b)(3) provides that "[t]he Highlands permitting review program established pursuant to this section shall include . . . a provision that may allow for a waiver of any provision of the Highlands permitting review on a case-by-case basis in order to avoid the taking of property without just compensation." (Emphasis added).
To implement N.J.S.A. 13:20-33(b)(3), the DEP has adopted a detailed regulation that governs review of an application for a hardship waiver to avoid the taking of property without just compensation. N.J.A.C. 7:38-6.8. This regulation provides in part:
(a) In accordance with N.J.S.A. 13:20-33b, the [DEP] may, on a case by case basis, waive any requirement . . . if necessary to avoid the taking of property without just compensation.
. . . .
(c) In determining whether to waive any requirement of this chapter to avoid an alleged taking of property without just compensation, the [DEP] shall consider:
1. The investments the property owner made in the property as a whole on which regulated activities are proposed and whether the investments were reasonable, . . . ;
2. The minimum viable and economically beneficial use of the property as a whole, . . .; and
3. The environmental impacts of the minimum viable and economically beneficial use for the property as a whole, and the consistency of these impacts with the goals of the Highlands Act[.]
(d) In determining whether the property owner's investments in the property as a whole were reasonable, the [DEP] shall consider:
1. Conditions at the time of the investment. That is, the investment shall have been made in pursuit of development that would likely have been legally and practically possible on the property as a whole, considering all constraints existing and reasonably ascertainable at the time of the investment. . . . In determining conditions at the time of the investment, the [DEP] shall consider, at a minimum, the following:
i. Existing zoning and other regulatory requirements and conditions;
. . . .
iii. The likelihood the proposed development could obtain other necessary approvals such as wastewater treatment approvals or approvals from other local, State or Federal agencies;
. . . .

*450 v. The existence of, or likelihood of obtaining, services to the property such as sewers or electricity; and
. . . .
2. Costs actually incurred by the property owner in pursuit of development of the property as a whole that were reasonable in amount, related to the development, and unavoidable.
The trial court concluded that OFP was foreclosed from pursuing a claim that enactment of the Highlands Act resulted in a taking of its property because OFP failed to exhaust the administrative remedies provided by the Act.
On appeal, OFP argues that this conclusion was erroneous because (1) it applied for a hardship waiver, but the DEP failed to act upon the application, thus demonstrating that pursuit of such a waiver was a futile remedy; (2) it would be unreasonably onerous for OFP to pursue a hardship waiver in conformity with N.J.A.C. 7:38-6.8; and (3) the availability of a hardship waiver is not a constitutionally sufficient remedy for the alleged regulatory taking of OFP's property, because the Highlands Council's failure to adopt a master plan and transfer of development rights program within the time provided under the Highlands Act has deprived OFP of the opportunity to obtain other remedies. We reject these arguments and conclude that the trial court correctly held that OFP's taking claim should not be entertained because OFP failed to avail itself of the administrative remedy of a hardship waiver application under N.J.A.C. 7:38-6.8.

A
In support of the argument that it applied for a hardship waiver, OFP relies upon three letters it sent to the DEP on October 18 and December 14, 2004, and January 27, 2005. None of these letters cited N.J.S.A. 13:20-33(b)(3), the statutory provision authorizing a hardship waiver to avoid a regulatory taking. Moreover, the letters all predated the May 9, 2005 adoption of N.J.A.C. 7:38-6.8, which prescribes the procedures and standards for obtaining such relief. The October 18, 2004 letter simply requested a meeting with the Commissioner of the DEP regarding the Act's "application to the project and the potential for an exemption[.]" The December 14, 2004 letter stated that a DEP employee had advised OFP's counsel that "there is no statutory exemption for this project," and that in light of this advice, OFP believed it had "exhausted administrative remedies" and intended to "proceed with [its] legal remedies." And the January 27, 2005 letter simply forwarded various permits and other documents to the DEP and concluded by saying, "we would welcome the opportunity to meet with you to discuss any questions that you may have[,]" without mentioning an application for a hardship waiver. OFP did not make any further submission to the DEP after the adoption of the hardship waiver regulations in May 2005.
Consequently, it is clear that the only application OFP ever submitted to the DEP was an application for a total exemption from the provisions of the Act. Moreover, OFP expressed the belief in its December 14, 2004 letter that this application had been denied and that the denial was sufficient to satisfy the requirement of exhaustion of administrative remedies.[2] OFP then proceeded in accordance with this position by filing the present action on January 14, 2005. Furthermore, OFP's *451 argument that the requirements set forth in N.J.A.C. 7:38-6.8 for submission of a hardship waiver application are unreasonably onerous, which is discussed in the next subsection of this opinion, implicitly recognizes that OFP did not file an application in conformity with those requirements. Therefore, the trial court correctly concluded that OFP's series of letters to the DEP did not constitute an application for a hardship waiver.

B
Although OFP seeks to justify its failure to submit an application for a hardship waiver in conformity with N.J.A.C. 7:38-6.8 on the ground that the requirements of this regulation are unreasonably onerous, it did not file an appeal challenging the validity of this administrative regulation, as it could have done. Moreover, since OFP did not file a hardship waiver application, there is no record upon which to determine how the DEP would have applied the regulation in considering such an application.
Some of the requirements to which OFP objects, such as the requirements that a party may seek a waiver "only after the [DEP] determines that the proposed development does not meet all the requirements in this chapter as strictly applied," and after the applicant has concluded all of its "administrative and legal challenges to that determination," N.J.A.C. 7:38-6.8(b), appear fairly onerous. However, we must assume the DEP will administer N.J.A.C. 7:38-6.8 in a manner that implements the evident intent of N.J.S.A. 13:20-33(b)(3) to avoid exposing the State to monetary liability for a regulatory taking. Consistent with this intent, we assume that the DEP will use the pre-application meeting mandated by N.J.A.C. 7:38-6.4(c) to streamline the application procedure and that it will only require an applicant to submit such information and materials as may be reasonably required with respect to the development of its property. For example, in the case of an applicant such as OFP, which had acquired all necessary approvals for development before enactment of the Act, the DEP may conclude that some requirements of N.J.A.C. 7:38-6.8 can be satisfied by submission of the materials previously submitted to the municipal planning board and the DEP. Therefore, it is not evident on the face of N.J.A.C. 7:38-6.8 that OFP's submission of a hardship waiver application would be so onerous that it cannot constitutionally be required to submit such an application.

C
The Highlands Act requires the Highlands Council to adopt a regional master plan "within 18 months after the date of its first meeting[.]" N.J.S.A. 13:20-8(a). The Act also requires the Council "to establish a transfer of development rights [TDR] program for the Highlands Region that furthers the goals of the regional master plan." N.J.S.A. 13:20-13(a). Although more than thirty-one months have elapsed since the Council's first meeting, it has not yet adopted a regional master plan. As a result of this delay and the Council's failure to take other steps required for establishment of a TDR program, such a program does not yet exist.
OFP argues that the absence of a TDR program relieves it of the obligation to apply for a hardship waiver, because N.J.A.C. 7:38-6.8(g)(2) requires an applicant for such a waiver to show that it "has made a good faith effort to transfer development rights for the subject site pursuant to N.J.S.A. 13:20-13[.]" However, the DEP has certified that applicants will be exempted from this requirement until a TDR program is adopted. Although OFP contends that this exemption *452 is invalid because it was not adopted by regulation, N.J.A.C. 7:38-6.4(a)(3) authorizes the DEP to "waive any provision [of the Highlands Act regulations] on an individual, case by case basis . . . [t]o avoid the taking of property without just compensation[.]" If the DEP required an applicant for a hardship waiver to show that it had made a good faith effort to transfer development rights even though a program for such a transfer does not yet exist, such arbitrary and unreasonable administration of the Highlands Act regulations could support a claim that the Act has resulted in a taking of OFP's property. Therefore, N.J.A.C. 7:38-6.4(a)(3) provides the requisite authorization for the DEP to exempt OFP and other applicants from the requirements of N.J.A.C. 7:38-6.8(g)(2). In any event, N.J.A.C. 7:38-6.8(g)(2) only requires an applicant to make a "good faith effort" to transfer development rights. In the absence of a TDR program, an applicant may demonstrate "good faith" without showing any such effort.
OFP also argues that the DEP's failure to adopt a TDR program within the time allowed under the Act has deprived it of one of the remedies provided by the Legislature and, in the absence of this additional remedy, the availability of a hardship waiver is insufficient to avoid a taking. However, even if the DEP had adopted this program, the opportunity to participate in a transfer of development rights would not be within OFP's control.
A TDR program is a land use tool that permits a public agency to use market forces to encourage the transfer of development potential from areas the agency wants to preserve (sending zones) to areas that are more appropriate for growth (receiving zones). Landowners in sending zones may obtain compensation in the form of TDR credits for restricting development on their properties. Payment for this lost development potential comes from purchasers who buy TDR credits, which then entitle the purchasers to build in a receiving zone at a greater density than permitted by the underlying zoning.
Under the Highlands Act, the establishment of receiving zones is strictly voluntary. N.J.S.A. 13:20-13(c). Although the Highlands Council has responsibility for designating areas appropriate for development as receiving zones, the municipality in which such an area is located has no obligation to accept such a designation. See N.J.S.A. 13:20-13(c),(d),(e). Moreover, a property owner who has obtained TDR credits has no assurance of being offered any particular price for them. Therefore, we agree with the Attorney General's characterization of the Highlands Act TDR program as "voluntary and market-driven and, thus, inherently uncertain."
Moreover, we conclude that even without implementation of a TDR program, the remedy of a hardship waiver application is sufficient on its face to prevent a regulatory taking of OFP's property. We construe N.J.S.A. 13:20-33(b)(3) as a directive to the DEP to grant hardship waivers from the regulations governing development in the preservation area on as broad a basis as is required to avoid any taking without just compensation. The DEP has responded to this legislative directive by the adoption of regulations that recognize its obligation to take into consideration all factors relevant to the determination of a regulatory taking "including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." Palazzolo, supra, 533 U.S. at 617, 121 S.Ct. at 2457, 150 L.Ed.2d at 607. N.J.A.C. 7:38-6.8(c) provides that in determining whether to grant a hardship waiver, the DEP *453 must consider "[1] [t]he investments the property owner made in the property as a whole on which regulated activities are proposed and whether the investments were reasonable, . . . [2] [t]he minimum viable and economically beneficial use of the property as a whole, . . . and [3] [t]he environmental impacts of the minimum viable and economically beneficial use for the property as a whole, and the consistency of these impacts with the goals of the Highlands Act[.]" In addition, N.J.A.C. 7:38-6.8(d) provides that in determining whether a property owner's investments in its property were reasonable, the DEP must consider whether the development "would likely have been legally and practically possible . . . considering all constraints existing and reasonably ascertainable at the time of the investment" and the "[c]osts actually incurred by the property owner in pursuit of development of the property as a whole that were reasonable in amount, related to the development, and unavoidable." Thus, under these regulations, a property owner such as OFP, which obtained all but one of the approvals required for development of its property before the Highlands Act was introduced, has a stronger claim to a hardship waiver than a property owner which had taken no steps to develop its property when the Act was introduced and enacted. See Brace v. United States, 72 Fed. Cl. 337, 353-55 (Fed.Cl.2006); East Cape May Assocs. v. State, Dep't of Envtl. Prot., 300 N.J.Super. 325, 337, 693 A.2d 114 (App.Div.1997).
We recognize that the DEP could administer N.J.A.C. 7:38-6.8 in a manner that fails to give property owners such as OFP the hardship relief required "to avoid the taking of property without just compensation." N.J.S.A. 13:20-33(b)(3). However, we cannot just assume that the DEP will default in this statutory responsibility. Instead, the DEP must be allowed to "arrive[] at a final, definitive position regarding how it will apply" N.J.A.C. 7:38-6.8 to the property owned by OFP and others before the courts can determine whether a regulatory taking has occurred. Williamson, supra, 473 U.S. at 191, 105 S.Ct. at 3119, 87 L.Ed.2d at 141.

II
N.J.S.A. 13:20-28(a)(3) provides an exemption from the Highlands Act for any major development project that received the land use and environmental approvals specified therein on or before March 29, 2004, which was the date the bill that became the Act was introduced in the Legislature. The practical effect of N.J.S.A. 13:20-28(a)(3) is to subject any major development project that had not received the required approvals before the Act was introduced to its regulatory provisions. Thus, OFP's failure to obtain a Safe Drinking Water Act approval until May 14, 2004 makes the Act applicable to its property.
OFP argues that the retroactive application of the Highlands Act to its proposed subdivision, which received its final environmental approval during the interim period between the bill's introduction and enactment into law, violates the Due Process Clauses of the New Jersey and United States Constitutions and results in a "manifest injustice." In support of this argument, OFP relies primarily upon Nobrega v. Edison Glen Associates, 167 N.J. 520, 772 A.2d 368 (2001), which articulated a two-part test for determining the validity of the retroactive application of legislation. First, a court must determine whether a statute that provides for retroactive application violates the due process guarantees of the federal and state constitutions because there is no "rational basis" for such retroactive application. Id. at 544, 772 A.2d 368; see also A.H. Robins Co. v. Dir., Div. of Taxation, 365 N.J.Super. *454 472, 484, 839 A.2d 914 (App.Div.), aff'd o.b., 182 N.J. 77, 861 A.2d 131 (2004). Second, "[e]ven in the absence of a constitutional violation, [a court] may nevertheless apply [its] equitable powers and decline to apply [legislation] retroactively if retroactive application would constitute `manifest injustice.'" Nobrega, supra, 167 N.J. at 537, 772 A.2d 368 (quoting State Troopers Fraternal Ass'n of N.J. v. State, 149 N.J. 38, 55-56, 692 A.2d 519 (1997)).

A
Although the Due Process Clause of the Fourteenth Amendment requires "retroactive legislation . . . to meet a burden not faced by legislation that has only future effects[,] . . . that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." United States v. Carlton, 512 U.S. 26, 31, 114 S.Ct. 2018, 2022, 129 L.Ed.2d 22, 28 (1994) (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601, 611 (1984)). Our Supreme Court has applied the same test in its most recent decision dealing with the validity of retroactive legislation under the Due Process Clause of the Fourteenth Amendment and the parallel provision of the New Jersey Constitution, N.J. Const. art. I, ¶ 1. See Nobrega, supra, 167 N.J. at 539, 544, 772 A.2d 368. Under this test, "[p]rovided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." Pension Benefit Guar. Corp., supra, 467 U.S. at 729, 104 S.Ct. at 2717-18, 81 L.Ed.2d at 611. Moreover, a court should be especially loathe to invalidate a legislative judgment to apply a statute retroactively for a "short and limited period[.]" Id. at 731, 104 S.Ct. at 2719, 81 L.Ed.2d at 612 (quoting United States v. Darusmont, 449 U.S. 292, 296-97, 101 S.Ct. 549, 552, 66 L.Ed.2d 513, 517 (1981)); accord Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979) (upholding constitutionality of retroactive application of tax on capital gains realized during the period between introduction and passage of legislation imposing the tax).
We are satisfied that there is a rational basis for limited retroactive application of the Highlands Act to a major development project that had not received all required approvals when the bill that became the Act was introduced in the Legislature. The legislative findings underlying the Act include findings that "since 1984, 65,000 acres, or over 100 square miles, of the New Jersey Highlands have been lost to development; [and] that sprawl and the pace of development in the region has dramatically increased, with the rate of loss of forested lands and wetlands more than doubling since 1995[.]" N.J.S.A. 13:20-2. In addition, the witnesses who testified at a March 22, 2004 legislative hearing regarding the proposed Act repeatedly expressed concern about the rapid pace of environmental damage from sprawl in the Highlands Region. Thus, the evident legislative purpose in providing for limited retroactive application of the Highlands Act was to prevent a rush by landowners to obtain development approvals while the Act was proceeding through the legislative process, which would reduce the amount of land subject to its regulatory provisions. Therefore, this retroactive application of the Act constitutes a rational means of pursuing a legitimate legislative purpose. We also note that even if the Legislature had chosen to apply the Act only to landowners who had not received all required approvals before its effective date, there inevitably would *455 have been some landowners who would have received all but one approval as of that date and thus would be subject to adverse consequences similar to those to which OFP is now subject.

B
We next consider OFP's argument that even if the retroactive application of the Highlands Act does not violate the Due Process Clauses of the United States and New Jersey Constitutions, such retroactive application should be invalidated because it results in a "manifest injustice." In support of this argument, OFP relies upon a series of decisions of our Supreme Court, the most recent of which is Nobrega, which state that even if retroactive application of a statute is not unconstitutional, a court may decline to enforce retroactive application "based on equitable concerns." Nobrega, supra, 167 N.J. at 545, 772 A.2d 368 (quoting Edgewater Inv. Assocs. v. Borough of Edgewater, 103 N.J. 227, 239, 510 A.2d 1178 (1986)).
Whatever the contours of this doctrine, we are satisfied it cannot be relied upon to invalidate retroactive application of a statute regulating land uses such as the Highlands Act. In Hills Development Company v. Bernards Township, 103 N.J. 1, 510 A.2d 621 (1986), the Court upheld the constitutionality of the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329, which transferred primary responsibility for determination of municipal obligations to provide a fair share of lower income housing needs from the courts to a newly established administrative agency. One section of the FHA provided for transfer to the agency of all cases then pending in the courts, "except, as to cases commenced more than 60 days before the effective date of the [FHA] . . . when it would result in `manifest injustice to any party to the litigation.'" Id. at 20, 510 A.2d 621 (quoting N.J.S.A. 52:27D-316). In addition to the constitutionality of the FHA, the primary issue in the appeal was whether the transfer to the agency of cases that had been pending for many years would result in "manifest injustice" because such transfers would substantially delay builders' plans for the development of their properties. In construing the term "manifest injustice" restrictively to apply only in the most exceptional circumstances, the Court stated:
The builder's loss of expected profits is discordant, under these circumstances, with the connotations of "manifest injustice." That loss is a risk to which builders are regularly exposed in a variety of circumstances.
. . . .
. . . If there is any class of litigant that knows of the uncertainties of litigation, it is the builders. They, more than any other group, have walked the rough, uneven, unpredictable path through planning boards, boards of adjustments, permits, approvals, conditions, lawsuits, appeals, affirmances, reversals, and in between all of these, changes in both statutory and decisional law that can turn a case upside down.
[Id. at 54-55, 510 A.2d 621.]
Similar to the plaintiff builders in Hills, OFP's claim that manifest injustice would result if it were deprived of the profits it expected to realize under the 1999 subdivision approval "is discordant . . . with the connotations of `manifest injustice.'" 103 N.J. at 54, 510 A.2d 621. OFP's interests in the development of its property are purely economic, and as discussed in section I of this opinion, those interests are protected by the Taking Clauses of the United States and New Jersey Constitutions and the availability under the Highlands Act and its implementing regulations of a hardship waiver application. OFP's position is not materially different from *456 that of numerous other landowners in the Highlands Region who had active development plans, but had not yet obtained all necessary approvals, before the introduction and enactment of the Highlands Act. OFP's position is also similar to landowners who had ongoing development plans when the Legislature enacted the Pinelands Protection Act, N.J.S.A. 13:18A-1 to -29, and Coastal Area Facility Review Act, N.J.S.A. 13:19-1 to -21, which imposed significant limitations upon development formerly permitted in the pinelands and coastal areas. Consequently, we agree with the trial court's conclusion that any claim OFP may have of unfairness in application of the Highlands Act to its development plan does not provide a basis for finding such application would result in a manifest injustice, but instead must be presented to the DEP in support of an application for a hardship waiver.
In rejecting OFP's challenges to the retroactive application of the Highlands Act, we emphasize that such retroactivity is limited to the four-and-a-half month period between the Act's introduction in the Legislature on March 29, 2004, and its enactment into law on August 10, 2004. OFP does not allege that it took any steps in reliance upon the preliminary subdivision approval while this highly publicized legislation was pending before the Legislature. Therefore, we have no occasion to consider the constitutionality or application of the manifest injustice doctrine to legislation that had a more far-reaching retroactive effect.

III
OFP's final argument is that the inclusion of its property in the preservation area is arbitrary and capricious because the property is located adjacent to a landfill, which has already resulted in contamination of drinking water in the area, and therefore, any limitation of this property's development will not further the Act's stated purpose of preserving clean water. This argument is clearly without merit and only requires brief discussion. R. 2:11-3(e)(1)(E). The stated purposes of the Act are not limited to preserving clean drinking water. The Act's purposes also include protection of the "natural resources of the New Jersey Highlands against the environmental impacts of sprawl development[,] . . . [discouragement of] piecemeal, scattered and inappropriate development, in order to accommodate local and regional growth and economic development in an orderly way . . . [and] maintenance of agricultural production and a positive agricultural business climate[.]" N.J.S.A. 13:20-2. Consequently, even if it could be shown that a limitation of development of OFP's property would not serve to preserve clean drinking water, such a limitation still could further the other stated purposes of the Act. Moreover, the Legislature was not required to consider the condition of each individual property within the preservation area in establishing its boundaries, because such boundaries are not required to "be formulated with mathematical perfection." Toms River Affiliates v. Dep't of Envtl. Prot., 140 N.J.Super. 135, 147-48, 355 A.2d 679 (App.Div.), certif. denied, 71 N.J. 345, 364 A.2d 1077 (1976). We also note that if stringent limitations on development of OFP's property are not required to serve any of the Highlands Act's purposes, this would be an appropriate consideration in reviewing an application for a hardship waiver. In fact, N.J.A.C. 7:38-6.8(f) provides that in determining "the environmental impacts of the minimum beneficial economically viable use of the property . . . and the consistency of those impacts with the goals of the Highlands Act," as required by N.J.A.C. 7:38-6.8(c)(3),
the [DEP] shall evaluate whether the use would, to the maximum extent possible:

*457 1. Have a de minimis impact on water resources and would not cause or contribute to a significant degradation of surface or groundwaters. . . . ;
. . . .
3. Result in the minimum feasible alteration or impairment of the aquatic ecosystem including existing contours, vegetation, fish and wildlife resources, and aquatic circulation of a freshwater wetland;
. . . .
5. Not be located or constructed so as to endanger human life or property or otherwise impair public health, safety or welfare;
Consequently, OFP will be afforded an opportunity in its submission in support of an application for a hardship waiver to present whatever evidence it may have that preservation of its property is not required to further the purposes of the Highlands Act.
Affirmed.
NOTES
[1] OFP's arguments are partly based on the Highlands Council's failure to adopt a master plan and transfer of development rights program within the time prescribed by the Legislature. To assure that this court's decision was based on up-to-date information regarding the Council's implementation of the Act, we entered an order on February 28, directing its Chairman to submit a certification indicating the date on which he anticipated the Council would adopt the regional master plan and transfer of development rights program. In response, the Chairman submitted a certification, dated March 6, 2007, which states that "[i]t is my hope . . . that the final Regional Master Plan will be adopted sometime before September 30, 2007[,]" and that "the Highlands Council anticipates implementation of the first phase of the transfer of development rights program to occur sometime between October and the end of November, 2007."
[2] The DEP did not formally deny OFP's application for an exemption until October 21, 2005, when it sent OFP a letter explaining its reasons for concluding that OFP's subdivision is not statutorily exempt from the Highlands Act. OFP has not challenged this conclusion.