NEW JERSEY RESTAURANT ASSOCIATION, INC., *ET AL.*, PLAINTIFFS-APPELLANTS, v. CARL HOLDERMAN, COMMISSIONER OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued April 1 and April 8, 1957—Decided May 13, 1957.

*Mr. C. Russell Kramer* argued the cause for plaintiffs-appellants (*Messrs. Reed, Reynolds, Smith & Kramer,* attorneys; *Mr. C. Russell Kramer,* of counsel).

*Mr. Thomas L. Franklin* argued the cause for defendant-respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney; *Mr. Thomas L. Franklin,* Deputy Attorney-General, of counsel).

*Mr. Thomas L. Parsonnet* argued the cause for the New Jersey State Culinary Alliance, AFL-CIO, *amicus curiae* (*Messrs. Parsonnet, Weitzman & Oransky,* attorneys; *Mr. Thomas L. Parsonnet,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, J. Plaintiffs filed a petition in the Appellate Division under *R. R.* 4:88–10 for a declaratory judgment invalidating Minimum Fair Wage Standards Mandatory Order No. 9 relating to restaurant occupations, promulgated by the Commissioner of Labor and Industry under the Minimum Wage Act, *R. S.* 34:11–34 *et seq.* Additional testimony was taken before the Commissioner pursuant to an order under *R. R.* 4:88–11. We certified the matter on our motion prior to consideration of it by the Appellate Division.

The statute declares the employment of a woman or minor in an occupation in this State at an oppressive and unreasonable wage to be contrary to public policy, *R. S.* 34:11–36, and provides that if the Commissioner is of the opinion that a substantial number of women or minors in any occupation are receiving oppressive and unreasonable wages, he shall appoint a wage board to report upon the establishment of minimum fair wage rates for women and minors in such occupation. *R. S.* 34:11–39. The Commissioner appointed a board of nine, consisting of three representatives each of employers, employees and the public pursuant to *R. S.* 34:11–40. After the required hearings, the Commissioner accepted the report and made the order here under attack.

Appellants urge the order is invalid in that (1) it differentiates between hotel restaurants and other restaurants, being applicable only to the latter; (2) there is no basis for the differential in rates between waitresses and so-called "carhops"; and (3) it is arbitrary to provide for a minimum wage differential where two meals are furnished the employee and to permit no differential where but one meal is furnished.

Appellants also challenged so much of the order as requires the overtime rate to be based upon the regular hourly rate rather than upon the minimum. It was stipulated that the issue be concluded by the decision in *Lane v. Holderman,* 23 *N. J.* 304 (1957), then pending before us. The use of

the regular rate was there upheld, and hence the issue in the present case has been determined.

Appellants do not question the monetary reasonableness of the minimum rates fixed. The attack is confined to the validity of the classifications described above and rests upon the equal protection clause of the 14th Amendment to the Federal Constitution and the concept of equality in our State Constitution. *Washington National Insurance Co. v. Board of Review of New Jersey Unemployment Compensation Commission,* 1 *N. J.* 545 (1949).

### I.

The major question is whether a rational basis exists for the differentiation of employments in independent restaurants from like employments in hotel restaurants. The issue implicates the constitutionality of the statute or its application here, for it is the statute which creates the classification, providing in *R. S.* 34:11–34:

" 'Occupation' means an industry, trade or business or branch thereof or class of work therein in which women or minors are gainfully employed but shall not include domestic service in the home of the employer or labor on a farm or employment in a hotel."

The Commissioner was initially of the view that the statutory exclusion of "employment in a hotel" did not embrace employment "in a restaurant operated in a hotel catering to non-resident guests," and the order was framed accordingly. In another proceeding, the effort to include hotel restaurants catering to non-resident guests was found to conflict with the legislative exclusion and hence to be beyond the Commissioner's authority, but the invalidity as to hotel restaurants was held not to impair the vitality of the order as to independent restaurants. *Hotel Suburban System v. Holderman,* 42 *N. J. Super.* 84 (*App. Div.* 1956). None of the parties to that action sought a further review. The Commissioner accepts the conclusion there reached and the parties to the present action do not quarrel with the proposition that the Legislature intended to exclude em-

ployment in hotel restaurants whether or not they cater to non-resident clientele. We here accept that premise.

The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. *Railway Express Agency v. People of State of New York*, 336 *U. S.* 106, 69 *S. Ct.* 463, 93 *L. Ed.* 533 (1949); *Carmichael v. Southern Coal & Coke Co.*, 301 *U. S.* 495, 57 *S. Ct.* 868, 81 *L. Ed.* 1245 (1937); *Charles C. Steward Machine Co. v. Davis*, 301 *U. S.* 548, 57 *S. Ct.* 883, 81 *L. Ed.* 1279 (1937); *West Coast Hotel Co. v. Parrish*, 300 *U. S.* 379, 57 *S. Ct.* 578, 81 *L. Ed.* 703 (1937); *Radice v. People of State of New York*, 264 *U. S.* 292, 44 *S. Ct.* 325, 68 *L. Ed.* 690 (1924); *Dominion Hotel, Inc., v. State of Arizona*, 249 *U. S.* 265, 39 *S. Ct.* 273, 63 *L. Ed.* 597 (1919); *Guill v. Mayor and Council of City of Hoboken*, 21 *N. J.* 574 (1956). The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, *Carmichael v. Southern Coal & Coke Co., supra; Radice v. People of State of New York, supra,* or because of "some substantial consideration of public policy or convenience or the service of the general welfare." *De Monaco v. Renton*, 18 *N. J.* 352, 360 (1955). Hence it may "stop short of those cases in which the harm to the few concerned is thought less important than the harm to

the public that would ensue if the rule laid down were made mathematically exact." *Dominion Hotel, Inc., v. State of Arizona, supra* (249 *U. S.,* at *page* 268, 39 *S. Ct.,* at *page* 274). Additionally, it is established that the equal protection provision does not foreclose classifications in the exercise of the power to tax designed to promote or aid a business in furtherance of the public welfare, *Carmichael v. Southern Coal & Coke Co., supra; Schwartz v. Essex County Board of Taxation,* 129 *N. J. L.* 129 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 177 (*E. & A.* 1943); and in principle the same freedom of legislative decision must attend the exercise of the police power.

Of course, these flexible rules still require that the classification be reasonably rooted in facts, but the burden is upon the assailant to negate the existence of the required facts. Where delegated authority is involved, it may be feasible to establish the claimed basis and then measure it against the principles. But where an act of the Legislature is challenged, there is no way to corral the considerations which moved the individual lawmakers to vote for the measure, *Carmichael v. Southern Coal & Coke Co., supra* (301 *U. S.,* at *page* 510, 57 *S. Ct.,* at *page* 872); and if any state of facts can reasonably be conceived which would support the classification, the act must be sustained. *Carmichael v. Southern Coal & Coke Co., supra; Jamouneau v. Harner,* 16 *N. J.* 500 (1954); *Guill v. Mayor and Council of the City of Hoboken, supra* (21 *N. J.* 574); *Gundaker Central Motors, Inc., v. Gassert,* 23 *N. J.* 71 (1956). Thus, one who attacks has the task of establishing a negative proposition, the inherent difficulty of which is compounded by the play of the rule that the law must be upheld if any set of facts can reasonably be conceived to support it under any of the broad principles relating to the power to classify. Although the requisite facts must be "reasonably" conceivable, and in that connection a judge may draw upon his general knowledge, yet the further removed a judge's private experience is from the economic scene in which a law is to function, the greater will be his reluctance to conclude

that a claimed factual basis is merely fanciful. And lastly, if all of the facts should be developed, there appropriately remains a judicial reluctance to quarrel with the legislative evaluation of them. *Radice v. People of State of New York, supra* (264 *U. S.,* at *page* 294, 44 *S. Ct.,* at *page* 326).

It is upon the burden of factual proof that the attack here founders. The essence of appellants' case is that the independent restaurant and the hotel restaurant compete for the same patronage and that the service of the waitress in both is essentially the same. If both propositions be accepted, it by no means follows that all restaurants constitute a single, indivisible class. If the classification be weighed in the light of the objective of the legislation, to eliminate the employment of women and minors at oppressive and unreasonable wages, still the Legislature, for all we know, may well have found that hotels as a class are not a source of the evil; that they pay fair wages for all employments; and that so far as waitresses are concerned, the gratuities received in hotels are generally larger than in independent restaurants taken as a class. And if the evil may be found in hotel employment, still its incidence may be too sporadic to warrant the burden of enforcement. There is nothing in the record to dispel this conceivable state of facts.

Nor is there identity of other economic circumstances. The hotel usually serves three meals a day to meet the needs of its residents, whereas the independent restaurant may limit its operation to the profitable hours. The hotel may find it necessary to operate its restaurant at a loss to serve the convenience of its guests, while the independent may retire or move to another location. Further, we have important resort areas in our State which compete with neighboring states for vacation trade. It may well be that the Legislature weighed such matters and determined upon all pertinent factors that the public welfare would be furthered by the exclusion of hotels from the minimum wage law.

The *amicus curiae* would approach the constitutional issue solely from the employee's point of view, urging that the

nature of the service rendered in both classes of restaurants is the same. One fatal flaw is the absence of proof that the wages and tips received in hotel employment are such as to present the problem which led to the legislation. We are dealing with a minimum wage, and the record, scant as it is, shows as to restaurant employees that the bargained wage determined in representative negotiations is generally higher than the prescribed minimum. It may well be that hotels as a group meet the negotiated scale; at least there is no evidence to the contrary. And lastly, the Legislature is not compelled to find that the total public policy of the State resides in identical treatment of all employees rendering the same service, despite varying economic factors affecting the operator. It may, upon weighing other phases of public interest and the practical considerations involved, decide to achieve benefits for less than the entire class of possible beneficiaries.

Appellants rely upon *Burrow v. Kapfhammer*, 284 *Ky.* 753, 145 *S. W.* 2d 1067 (*Ct. App.* 1940), and *Gasque, Inc., v. Nates*, 191 *S. C.* 271, 2 *S. E.* 2d 36 (*Sup. Ct.* 1939). In both cases, a distinction between hotel restaurants and independent restaurants was found to be invidious, the first cited case involving a statute providing for time and one-half for the seventh day worked in a week, and the second case involving a maximum hour law. Ultimately, the answer must turn on the facts of each case, and hence the value of other decisions rests more in the principles of law they espouse than in their specific application. Thus viewed, we are not aided by either decision. With respect to the judicial approach to the problem, the most persuasive reference is to *Radice v. People of State of New York, supra* (264 *U. S.* 292, 44 *S. Ct.* 325). Involved was a statute prohibiting employment of women in restaurants in cities of the first and second class between the hours of 10 o'clock at night and 6 o'clock in the morning. Among the exclusions were employment in dining rooms and kitchens of hotels. The act was sustained upon application of the principles stated above. Quoting from *Miller v. Wilson*, 236 *U. S.* 373,

35 *S. Ct.* 342, 59 *L. Ed.* 628 (1915), in which there was upheld a statute fixing hours of labor for women in hotels but excluding employment in boarding and lodging houses, the court said (264 *U. S.*, at *page* 297, 44 *S. Ct.*, at *page* 327) :

"The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the Legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies, the Legislature may be guided by experience. *Patsone v. [Commonwealth of] Pennsylvania,* 232 *U. S.* 138, 144 [34 *S. Ct.* 281, 58 *L. Ed.* 539, 544]. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may 'proceed cautiously, step by step,' and 'if an evil is specially experienced in a particular branch of business' it is not necessary that the prohibition 'should be couched in all-embracing terms.' *Carroll v. Greenwich Ins. Co. [of New York],* 199 *U. S.* 401, 411 [26 *S. Ct.* 66, 50 *L. Ed.* 246, 250]. If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied, *Keokee Consol. Coke Co. v. Taylor,* 234 *U. S.* 224, 227 [34 *S. Ct.* 856, 58 *L. Ed.* 1288, 1289]. Upon this principle, which has had abundant illustration in the decisions cited below, it cannot be concluded that the failure to extend the act to other and distinct lines of business, having their own circumstances and conditions, or to domestic service, created an arbitrary discrimination as against the proprietors of hotels."

Appellants suggest *Radice* is distinguishable because there the act involved hours of employment rather than minimum wages. The court in *Radice* did note that difference but did so in its discussion of due process, *i. e.,* the power of the state to legislate at all, rather than with respect to the impact of the equal protection clause upon the exercise of a conceded power to deal with the evil. The distinction was there drawn to escape the unfortunate holding in *Adkins v. Children's Hospital of District of Columbia,* 261 *U. S.* 525, 43 *S. Ct.* 394, 67 *L. Ed.* 785 (1923), that freedom of contract foreclosed legislative prescription of minimum wages for women and minors. It may be noted that when *Adkins* was overruled in *West Coast Hotel Co. v. Parrish, supra* (300 *U. S.* 379, 57 *S. Ct.* 578), as to the power to enact

minimum wage laws, the court relied upon *Radice* and other cases in which legislation fixing hours of work had been upheld. We see no controlling difference between these types of legislation; they have the common objective of protecting the health and welfare of women and minors in industry, and although the economic impact upon industry may be greater in degree in the case of a minimum wage law, the difference does not rise as a constitutional impediment to the classification here involved.

Hence we conclude the statute is constitutional. More accurately, we cannot find on the record before us that it is unconstitutional. We are mindful that the equal protection clause is a vital guarantee against despotic action, as the late Mr. Justice Jackson forcefully demonstrated in his concurring opinion in *Railway Express Agency v. People of State of New York, supra* (336 *U. S.*, at *page* 111, 69 *S. Ct.*, at *page* 466). But the judicial deference due to the coordinate branches of the government requires an exacting burden of proof, even though it can rarely be met. We so observe, not by way of lament, for the legislative and executive branches are equally the guardians of the constitutions, but rather to emphasize that those branches provide forums in which this constitutional guarantee may be pressed with greater profit. This is so, not because our desire to enforce the equal protection clause is any less than theirs, but for the reason that they have the factual wherewithal and we seldom do. It may be noted that bills (*Senate No.* 86 and *Assembly No.* 194) are now pending which would eliminate the exclusion here complained of. We, of course, intend no expression upon the merits; we just do not know all the facts, and in any event policy is beyond our province. Rather, we point to the legislative role in this constitutional area because we are aware that it is sometimes said that constitutional issues should be left to the judiciary, and we are equally aware of the frustrating difficulty of making a definitive record in the courtroom.

## II.

■ The order differentiates between (1) the conventional waitress, who serves food or food and drink to persons seated at a regular table or counter, and (2) "car-hops," who are defined as "non-service employees, the major portion of whose duties * * * consist of serving food and/or beverage to persons seated in automobiles." Appellants claim that the nature of the service rendered is the same with respect to both, and hence it is arbitrary to prescribe a higher minimum rate for car-hops.

*R. S.* 34:11–44 provides in part that "A wage board may differentiate and classify employments in any occupation according to the nature of the service rendered and recommend appropriate minimum fair rates for different employments." The order prescribes a minimum hourly rate of 80 cents for car-hops and 66 cents for waitresses, less 13 cents in each case if two or more meals per day are furnished.

The commissioner's findings read:

"With reference to non-service employees the major portion of whose duties consist of serving food and/or beverages to persons seated in automobiles, I find:

(a) That they are required to work in all kinds of weather, some throughout the year, in inclement weather such as rain and snow and they are continuously going in and out-of-doors.

(b) That often the amount of work and remuneration depends upon the season of the year and tapers off during the winter, and that their total income decreases during inclement weather.

(c) That they may lose their employment entirely during the winter.

(d) That very often the duties include the cleaning of the premises.

(e) That frequently they have additional inside duties such as cleaning tables, trays, making drinks, etc.

(f) That they are required to carry food and/or beverages long distances (as compared to that traveled by waitresses, *i.e.*, service employees) sometimes over rough ground sometimes covered with sharp stones and gravel.

(g) That as a general rule they are attractive minor girls and that they may be and at times are called upon to wear uniforms briefer than those of waitresses (*i.e.* service employees) during the summer.

(h) That their work is harder on clothes and shoes than a waitress' (*i.e.* service employee's) work.

(i) I find that in the foregoing respect the conditions, vicissitudes and difficulties of employment for women and minors employed as 'non-service employees' the major portion of whose duties consist in serving food and/or beverages to persons seated in automobiles, are different from the conditions, vicissitudes and difficulties of employment experienced by women and minors employed as 'service employees,' and that such differences justify a difference in the minimum basic hourly rates of pay for each of the aforesaid categories, as said categories are defined in Wage Order No. 9."

The statute authorizes the classification of employments. The order is presumptively a proper exercise of the delegated discretion, *In re New Jersey Power & Light Co.*, 9 *N. J.* 498 (1952), and will not be disturbed in the absence of an affirmative showing that it was arbitrary, capricious or unreasonable, *Carls v. Civil Service Commission*, 17 *N. J.* 215 (1955); *City of Newark v. New Jersey Turnpike Authority*, 7 *N. J.* 377 (1951), appeal dismissed 342 *U. S.* 874, 72 *S. Ct.* 168, 96 *L. Ed.* 657 (1951). The determination of the operational facts having been committed to the expert judgment of the administrative agency, the judiciary cannot merely substitute its judgment. *In re Plainfield-Union Water Co.*, 11 *N. J.* 382 (1953).

Appellants' proof goes no further than to show that some individual employers believe the service rendered by waitresses and car-hops to be the same. There was an inconclusive attempt to prove that gratuities paid car-hops equal or exceed those paid to waitresses. The whole subject of tips is obscured by the tax-wise vagueness and generality of employee-witnesses and did not figure in the Commissioner's determination. The differences in service found by the Commissioner, as quoted above, are well supported by the record, and considered in the light of the statutory objective, they easily sustain the classification made.

### III.

The remaining issue is whether the order is unreasonable in providing for a wage differential if "two or more meals per day" are furnished the employee. Unreasonableness is

charged in the alleged failure to allow a differential if but one meal is provided.

It is not disputed that the practice in the industry is to furnish two meals where employment is for a full day, and one meal where the employee works a half-day. The inequity is claimed to be that the employer who furnishes one meal to the part-time employee must pay the higher rate because he does meet the requirement of "two or more meals per day." The challenge rests upon a misunderstanding of the order. The record establishes that a like provision in an earlier order was consistently construed to mean that if one meal is furnished to the employee working a half-day or less, the employer is furnishing meals at the rate of "two or more meals per day" and hence may pay at the lower hourly rate. While this matter was pending before us, the Commissioner amended the order to spell out this interpretation.

Appellants also pressed a claim with respect to the theoretical situation in which a full-time employee receives but one meal. No witness knew of any such instance, and normal eating habits confirm the hypothetical nature of the question. In any event, the order does not require the employer to furnish meals nor does it bar him from charging the employee for food consumed. Rather, it authorizes a reduced rate of pay if meals are furnished without charge. Hence an employer so situated, if there be any, can adjust his practice to the order. And these observations dispose as well of the special situation of one operator whose menu may be too confined to permit him to furnish "meals" within the order's definition of the term. The reasonableness of an order of legislative quality may not be impugned on the basis of an isolated operation where the party concerned remains free to choose between fair alternatives.

The order under review is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*For reversal*—None.