231 N.J. Super. 341 (1989)
555 A.2d 710
NEIL NOTA, APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR AND ILN ASSOCIATES, INC., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 1, 1989.
Decided March 29, 1989.
*342 Before Judges KING and BRODY.
Neil Nota, appellant, file a brief pro se.
Donald R. Belsole, Acting Attorney General, attorney for respondent Board of Review (James J. Ciancia, Assistant Attorney General, of counsel; Bessie A. Sacco, Deputy Attorney General, on the brief).
No brief was filed on behalf of respondent ILN Associates, Inc.
The opinion of the court was delivered by BRODY, J.A.D.
The Board of Review (Board), Department of Labor, Division of Unemployment and Disability Insurance (Division), affirmed *343 the determination of an Appeals Examiner (AE) that appellant (claimant) had received unemployment benefits totaling $5,564 which he was not entitled to receive. Pursuant to N.J.S.A. 43:21-16(d), the Board ordered him to repay the sum in full. The determination was based upon an exception to the statutory definition of "unemployment" (the exception) that disqualifies a person otherwise unemployed from receiving benefits if he is an officer or is a more than 5% owner or creditor of a corporation that was his last employer. Claimant contends in this appeal that he was not subject to the exception because his corporation had permanently ceased doing business before be became unemployed. The Board applied the exception because claimant had not dissolved his corporation.
The exception, which appears in a 1984 amendment to the N.J.S.A. 43:21-19(m)(1) definition of "unemployment," provides:
... except that for benefit years commencing on or after July 1, 1984, an officer of a corporation, or a person who has more than a 5% equitable or debt interest in the corporation, whose claim for benefits is based on wages with that corporation shall not be deemed to be unemployed in any week during the individual's term of office or ownership in the corporation.
The exception does not disqualify a person from receiving benefits because he had been an officer or had been a more than 5% owner or creditor of a corporation that was his last employer. The disqualification attaches only if the person continues to be an officer or a more than 5% owner or creditor in any week for which he claims benefits.
The exception is meant to prevent a claimant from receiving benefits for being unemployed at a time when, as an officer or more than 5% owner or creditor of his former corporate employer, *344 he is in a position to influence its decision to rehire him. He is not in that position if he is no longer an officer, owner or creditor of the corporation or if the corporation has permanently ceased doing business.[1]
The evidence before the AE was uncontradicted. In 1985 claimant, a data processing consultant, sought employment by the American Telephone & Telegraph Company (AT & T). AT & T agreed to his being engaged for one year as a subcontractor to one of its contractors provided he did business in the corporate form. Claimant thereupon formed ILN Associates, Inc. (ILN) which entered into a one-year subcontract in April 1985. He drew a salary of $700 a week from ILN for the duration of the contract. AT & T did not authorize renewal of the contract and at the end of March 1986 claimant was out of work.
He then consulted an accountant for advice as to what to do with ILN because it no longer served any purpose. The AE received in evidence a written statement of the accountant in which he described the situation and recounted the advice he had given claimant.
Mr. Nota was the president of ILN Associates, Inc., a corporation which was incorporated on April 25, 1985 in New Jersey and ceased to exist on March 31, 1986. The corporate checking account was totally depleted upon payment of all corporate payroll taxes and liabilities, including the New Jersey Employment Security Agency.

*345 I advised Mr. Nota to let the corporation die a natural death. It would be too costly to file the necessary official termination papers, especially since he was unemployed and without any other source of income at that time. At the time, I was unaware that failure to file the dissolution papers might prevent my client from receiving his unemployment benefits.
The corporation filed its final corporate federal and New Jersey tax returns, all the necessary 941's, 940's, W-2's and New Jersey Employment Security forms for 1986 including the second quarter. All of these forms were prepared by me.
The accountant's statement was corroborated by the corporation's bank statements, cancelled checks and other documents. For instance, claimant checked a line on ILN's Federal Tax Form 941 that reads, "If you are not liable for returns in the future, check here ..." and stated further on that line that "final wages" were paid "3/31/86." Also, claimant wrote a handwritten letter to the New Jersey Division of Taxation in which he stated:
I Neil Nota, as President of ILN Associates Inc., am writing this letter to serve as my official notice of the closing of my business by March 31, 1986. My employer ID # is XX-XXXXXXX. ILN Assoc. Inc. has not generated income since January 1986 and is devoid of any prospective business and income.
Please notify the proper authorities and departments pertaining to the closing of businesses, so that there will not be any detrimental repercussions due to the dissolution of this company.[2]
At no time had claimant concealed from the Division any facts related to his interest in ILN. John A. Schaffer, a Supervising Investigator with the Division, investigated claimant's affairs to determine if by accepting unemployment benefits he had committed a fraud. Schaffer not only found no evidence of fraud, but he testified on claimant's behalf that in his opinion claimant had "substantially complied" with the *346 requirement that he be neither an officer nor a more than 5% owner or creditor of ILN during the period for which he had received benefits.
A claimant may disassociate himself from a corporation that was his last employer by resigning his office or by disposing of his stock or debt interest. The association is also broken if the corporation permanently ceases doing business. In the latter instance, as a matter of administrative convenience the Division may reasonably require a corporation to dissolve in order to establish that it has permanently ceased doing business. See N.J. Restaurant Assn. v. Holderman, 24 N.J. 295, 300 (1957). However, the Division may not use such a litmus test without first adopting it by regulation, which it has not done, so that interested members of the public may express their views and those affected will know in advance what to expect.[3]Crema v. New Jersey Dept. of Environmental Protection, 94 N.J. 286, 300-301 n. 11 (1983).
Circumstances to be considered in determining whether an agency must proceed by rule-making rather than by adjudication are collected in Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331-332 (1984):
We can synthesize from this authority that an agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) *347 prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
Here, without benefit of a regulation, the Board as a matter of policy engrafted onto the statutory exception a requirement that a corporation must be dissolved before it can be considered to have permanently ceased doing business.
Although dissolution of a corporation is certain proof that it has permanently ceased doing business, it is not unusual for owners of a corporation that has permanently ceased doing business simply to abandon it, as was done here, in order to avoid the expense of formal dissolution.[4] In the absence of a regulation to the contrary, a claimant who was an officer or a more than 5% owner or creditor of a corporation that was his *348 last employer, and who otherwise qualifies, is "unemployed" as defined by N.J.S.A. 43:21-19(m)(1) if the corporation had permanently ceased doing business before the period for which he claims benefits, even though the corporation has not been dissolved.
Reversed.
NOTES
[1] The exception is one of several amendments, adopted as L. 1984, c. 24, that incorporate the recommendations of the Governor's Commission on Unemployment. The Commission described as follows the specific inequity in prior law that the exception was intended to remedy:

Corporate officers and owners of seasonal businesses may qualify for benefits during the off season even though they have control over their work activities. [Excerpt from a summary of the Commission's proposals attached to a January 25, 1984 letter from the Chairman of the Commission to the Governor.]
[2] We do not suggest that this letter had any legal effect other than to demonstrate claimant's intent that ILN permanently cease doing business.
[3] Such a regulation would probably have to reconcile a claimant's immediate need for unemployment benefits with the time it takes to perfect a corporate dissolution.
[4] For our purposes, it is enough to observe that corporations are often "dead" without having been dissolved. It should be emphasized, however, that the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 et seq., requires that a corporation be dissolved upon liquidation. N.J.S.A. 14A:12-19. See Pachman, Title 14A  Corporations, Comment N.J.S.A. 14A:12-1 et seq. (1988), where, after observing that a "dead or dissolved corporation is different from one merely dormant," the author states:

The practice of distributing corporate assets and then letting the corporation die by simply ignoring it until it is voided for nonpayment of State taxes by proclamation under N.J.S 54:11-1 et seq., and N.J.S. 14A:12-1(1)(8) is not only forbidden by N.J.S. 14A:12-19, but may also subject the directors to liability for unpaid fees, taxes and other expenses incidental to the dissolution of the corporation to the extent of assets distributed to shareholders. N.J.S. 14A:6-12(1)(d). Unfortunately corporations without assets to distribute, or funds to pay for legal and accounting work necessary to proper interment, are frequently "abandoned" and thus linger and die at cost and nuisance to the State.