978 A.2d 312 (2009)
409 N.J. Super. 495
COUNTY OF WARREN, a body politic and corporate of the State of New Jersey, Plaintiff, and
David Shope, Hank Klumpp, Charles Shoop, Robert Best, Ruth Best, Andrew Drysdale, Lois Drysdale, Jerry W. Kern, and Sandra Kern, Plaintiffs-Appellants,
v.
STATE of New Jersey, New Jersey Department of Environmental Protection, New Jersey Highlands Water Protection and Planning Council, and New Jersey Water Supply Authority, Defendants-Respondents.
DOCKET NO. A-4591-07T1.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 2009.
Decided September 4, 2009.
*314 Broscious, Fischer & Zaiter, for appellants (John M. Zaiter, Washington and Stephen H. Shaw, Newton, on the briefs).
Anne Milgram, Attorney General, for respondents State of New Jersey, Department of Environmental Protection, New Jersey Highlands Water Protection and Planning Council, and New Jersey Water Supply Authority (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Barbara L. Conklin, Deputy Attorney General, on the brief).
Before Judges RODRÍGUEZ, PAYNE and WAUGH.
*315 The opinion of the court was delivered by
WAUGH, J.A.D.
The individual plaintiffs appeal the dismissal of their declaratory judgment action against the State of New Jersey, the Department of Environmental Protection (DEP), the Highlands Water Protection and Planning Council (Council), and the New Jersey Water Supply Authority (Authority)[1] (collectively, defendants). We affirm.

I.
According to the complaint, the individual plaintiffs are New Jersey farmers owning tracts of land, ranging in size from 18 to 150 acres, within the "preservation area" created by the Highlands Water Protection and Planning Act (Highlands Act), N.J.S.A. 13:20-1 to -35, which was signed into law in August 2004. Plaintiffs, along with the County of Warren (Warren County), alleged that: (1) the Council's failure to meet the statutory deadlines established by N.J.S.A. 13:20-8 for the adoption of a master plan frustrated the legislative scheme, such that the Council's decision to extend its time to act should be declared ultra vires (count one); (2) the statutory exemptions established by N.J.S.A. 13:20-28 improperly placed the entire burden of development restrictions upon owners of larger parcels of land, unlawfully treating similarly situated property owners differently in violation of the equal protection guarantee inherent in article one, paragraph one of the New Jersey Constitution (count two); (3) the transfer of development rights program to be established under N.J.S.A. 13:20-13 is not a viable funding source for the acquisition of exceptional natural resource lands to be protected under the Highlands Act (count three); and (4) the boundaries of the preservation area set forth in N.J.S.A. 13:20-7(b) were created without a legitimate scientific basis, and therefore violate the equal protection and due process guarantees of the New Jersey Constitution (count four).
In lieu of an answer, defendants moved to dismiss. The motion judge ultimately granted the motion and dismissed the amended complaint, relying in large part on our opinion in OFP, L.L.C. v. State, 395 N.J.Super. 571, 930 A.2d 442 (App.Div. 2007), aff'd o.b., 197 N.J. 418, 963 A.2d 810 (2008), which upheld the Highlands Act on due process and other grounds. The judge also dismissed the challenge to the Council's action in extending its time to adopt the master plan for lack of subject matter jurisdiction, finding that the issue was a final decision of a state administrative agency subject only to our direct review pursuant to Rule 2:2-3(a)(2). The judge found that there was no legal merit in plaintiffs' remaining claims. Finally, he denied plaintiffs' cross-motion for leave to file a further amended complaint, which would have added an additional plaintiff and stated a claim pursuant to 42 U.S.C.A. § 1983.
Plaintiffs filed a motion for reconsideration. That motion was denied in April 2008, with the resulting order filed on May 15, 2008. This appeal followed. Warren County did not file an appeal and has not participated in the appeal filed by the individual plaintiffs.

II.
On appeal, plaintiffs raise the following issues:

POINT ONE: THE NEW JERSEY HIGHLANDS WATER PROTECTION *316 AND PLANNING COUNCIL HAS ACTED ULTRA VIRES BECAUSE IT DID NOT ADOPT A MASTER PLAN WITHIN THE STATUTORY MANDATED DEADLINES AND THEREFORE THE ACT MUST BE SET ASIDE.

POINT TWO: THE COURT BELOW ERRED BECAUSE IT DID NOT RECOGNIZE THE RIGHT TO FARM AS A FUNDAMENTAL RIGHT, AND THEREFORE APPLIED THE RATIONAL BASIS STANDARD INSTEAD OF THE STRICT SCRUTINY STANDARD IN CONSIDERING PLAINTIFF-FARMERS' EQUAL PROTECTION RIGHTS.

POINT THREE: EVEN IF THE COURT BELOW APPLIED THE CORRECT STANDARD TO APPELLATE-PLAINTIFFS' EQUAL PROTECTION CHALLENGE TO THE HIGHLANDS ACT, IT SHOULD HAVE FOUND THAT THE ACT VIOLATES THE PLAINTIFF-FARMERS' EQUAL PROTECTION RIGHTS UNDER THE RATIONAL BASIS TEST BECAUSE THE HIGHLANDS ACT IS NOT JUSTIFIED BY AN APPROPRIATE SCIENTIFIC BASIS.

POINT FOUR: THE COURT BELOW ERRED BY NOT FINDING THAT THE STATUTORY EXEMPTIONS TO THE HIGHLANDS ACT VIOLATED THE EQUAL PROTECTION RIGHTS OF FARMERS BY IMPOSING THE MOST STRINGENT DEVELOPMENT RESTRICTIONS ON OWNERS OF LARGE PIECES OF LAND.

POINT FIVE: THE COURT BELOW ERRED BECAUSE IT DID NOT CONSIDER THE EXPERT REPORTS AND OTHER DOCUMENTS THAT WERE MADE PART OF THE RECORD BELOW.

A.
The motion judge dismissed the case on the basis of the defendants' Rule 4:6-2 motion, which should generally be granted "in only the rarest of instances." NCP Litig. Trust v. KPMG LLP, 187 N.J. 353, 365, 901 A.2d 871 (2006) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772, 563 A.2d 31 (1989)). A motion judge's review of a complaint is to be "undertaken with a generous and hospitable approach," ibid. (quoting Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31), and "the court should assume that the nonmovant's allegations are true and give that party the benefit of all reasonable inferences," ibid. (citing Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282, 839 A.2d 850 (2004)). "If `the fundament of a cause of action may be gleaned even from an obscure statement of claim,' then the complaint should survive this preliminary stage." Ibid. (quoting Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 626, 660 A.2d 505 (1995)).
Where, however, it is clear that the complaint states no basis for relief and that discovery would not provide one, dismissal of the complaint is appropriate. Sickles v. Cabot Corp., 379 N.J.Super. 100, 106, 877 A.2d 267 (App.Div.), certif. denied, 185 N.J. 297, 884 A.2d 1267 (2005) ("[A] court must dismiss the plaintiff's complaint if it has failed to articulate a legal basis entitling plaintiff to relief."); Holmin v. TRW, Inc., 330 N.J.Super. 30, 32, 748 A.2d 1141 (App.Div.2000), aff'd o.b., 167 N.J. 205, 770 A.2d 283 (2001); Camden County Energy Recovery Assocs. v. Dep't of Envtl. Prot., 320 N.J.Super. 59, 64, 726 A.2d 968 (App.Div.1999), aff'd o.b., 170 N.J. 246, 786 A.2d 105 (2001); Pressler, Current N.J. Court Rules, comment 4.1.1 to R. 4:6-2 (2009). "However, a dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon *317 which relief can be granted." Rieder v. State, 221 N.J.Super. 547, 552, 535 A.2d 512 (App.Div.1987).
If materials "outside the pleadings are considered, the motion is treated as a motion for summary judgment." Enourato v. New Jersey Bldg. Auth., 182 N.J.Super. 58, 64-65, 440 A.2d 42 (App.Div.1981) (citing R. 4:6-2). Although the motion judge did not specifically refer to treating the motion as one for summary judgment, he acknowledged that both sides submitted extensive exhibits. In reviewing a motion for summary judgment, a motion judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). For present purposes, that standard is substantially the same as the standard for a Rule 4:6-2 motion.
Because there was no evidentiary hearing, and hence no judicial factfinding in the Law Division, our review of the decision is plenary. Marshak v. Weser, 390 N.J.Super. 387, 390, 915 A.2d 613 (App.Div.2007).

B.
We turn first to the issue of the validity of the regional master plan. With respect to that issue, there were clearly no factual disputes, so we are dealing with a question of law only.
The Highlands Act created the Highlands Council, N.J.S.A. 13:20-4, which was "delegated responsibility for land use planning in the Highlands Region, consisting of nearly 800,000 acres in eighty-eight municipalities located in parts of Morris, Sussex, Passaic, Bergen, Warren, Hunterdon and Somerset Counties, N.J.S.A. 13:20-7(a)." OFP, supra, 395 N.J.Super. at 576, 930 A.2d 442. Pursuant to N.J.S.A. 13:20-8(a), the Council was required, "within 18 months after the date of its first meeting, and after holding at least five public hearings in various locations in the Highlands Region and at least one public hearing in Trenton, [to] prepare and adopt a regional master plan for the Highlands Region." The Council held its initial organizing meeting on December 16, 2004, consequently it was statutorily required to adopt a regional master plan by June 2006.
In April 2006, the Council adopted Resolution 2006-17, setting forth its schedule for adopting the regional master plan with a target date for adoption in December 2006. The Governor did not veto the Council's action, although he had the authority to do so pursuant to N.J.S.A. 13:20-5(j).
On November 30, 2006, the Council adopted its Resolution 2006-30, authorizing the release of a draft regional master plan and providing for January 2007 public hearings on the plan. The comment period was subsequently extended through May 11, 2007. Consequently, the plan had not yet been adopted when plaintiffs filed their initial complaint on April 19, 2007.
By Resolution 2008-27, the Council adopted its final regional master plan on July 17, 2008, and transmitted it to the Governor and other State entities for review. 40 N.J.R. 5852(b) (Oct. 6, 2008). The plan became effective on September 8, 2008. Ibid.
Plaintiffs contend that, because the Council was required to adopt a regional master plan within the eighteen-month period following the Council's initial meeting, the Council was powerless to act thereafter without additional authorization from the Legislature and, consequently, its purported actions extending the time for *318 adoption were ultra vires and its subsequent adoption of the regional master plan was void. They cite no cases to support that result.
Plaintiffs correctly observe that the Highlands Act, and particularly N.J.S.A. 13:20-8(a), did not grant the Council specific authority to extend the time for adoption of the regional master plan. It does not, however, follow that the Council's failure to act within the time set by the Legislature resulted in the extinguishment of its authority to adopt such a plan. There is nothing in the Highlands Act to suggest that the Legislature intended such a drastic result. We view the eighteen-month period as directory, rather than as a mandatory deadline that would invalidate any subsequent adoption of the plan. See New Jersey State Hotel-Motel Asso. v. Male, 105 N.J.Super. 174, 177, 251 A.2d 466 (App.Div.1969). See also Syquia v. Bd. of Educ. of Harpursville Cent. Sch. Dist., 80 N.Y.2d 531, 591 N.Y.S.2d 996, 606 N.E.2d 1387, 1390 (1992) ("[C]ourts have held in various contexts that deadlines imposed by statute will be read as directory rather than mandatory."). That in one instance involving the State Planning Act, N.J.S.A. 52:18A-196 to -207, the Legislature actually extended such a deadline by statute does not alter the result.

C.
We next address plaintiffs' equal protection arguments, which were also not decided on the basis of disputed facts. As previously noted, we have already rejected a due process attack on the constitutionality of the Highlands Act in OFP, supra, 395 N.J.Super. 571, 930 A.2d 442.
We start with the well established principles that statutes are presumed to be constitutional and that anyone challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998). In addition, we are obligated to construe a challenged statute to avoid constitutional defects if the statute is "`reasonably susceptible' of such construction." New Jersey Bd. of Higher Educ. v. Bd. of Dirs. of Shelton College, 90 N.J. 470, 478, 448 A.2d 988 (1982) (quoting State v. Profaci, 56 N.J. 346, 350, 266 A.2d 579 (1970)).
In Brown v. City of Newark, 113 N.J. 565, 573-74, 552 A.2d 125 (1989), the Supreme Court set forth the parameters for an equal protection analysis as follows:
As distinguished from standards governing due process claims, federal equal protection analysis involves different tiers or levels of review. If a fundamental right or suspect class is involved, the legislative classification is subject to strict scrutiny, Barone [v. Dept. of Human Servs.], 107 N.J. [355,] 364-65, 526 A.2d 1055 [(1987)]; Greenberg v. Kimmelman, 99 N.J. 552, 564, 494 A.2d 294 (1985), which requires that a statute further a compelling state interest and that there be no less restrictive means of accomplishing that objective. Barone, supra, 107 N.J. at 365, 526 A.2d 1055 (citing Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)). When it regulates a "semi-suspect" class, a legislative act is examined under "intermediate scrutiny," and must be substantially related to the achievement of an important governmental objective. Barone, supra, 107 N.J. at 365, 526 A.2d 1055 (citing Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), reh'g denied, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977)). If, as here, the enactment does not affect a suspect or semi-suspect class and does not attempt to regulate a fundamental right, it need be only rationally *319 related to a legitimate state interest to satisfy federal equal protection requirements. Ibid. (citing Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, reh'g denied, 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970)).
When conducting equal protection analysis under article I, paragraph 1 of the New Jersey Constitution, we have rejected a multi-tiered analysis and employed a balancing test. Barone, supra, 107 N.J. at 368, 526 A.2d 1055; Greenberg, supra, 99 N.J. at 567, 494 A.2d 294; Right to Choose v. Byrne, 91 N.J. 287, 308-09, 450 A.2d 925 (1982). "In striking the balance, we have considered the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Greenberg, supra, 99 N.J. at 567, 494 A.2d 294. Although stated differently, an equal protection analysis of rights under article I, paragraph 1 of the New Jersey Constitution, like an analysis of equal protection and due process under the fourteenth amendment of the United States Constitution, may lead to the same results. Id. at 569, 494 A.2d 294.
Plaintiffs assert that the motion judge erred first by applying the "rational basis" test for equal protection purposes rather than the "strict scrutiny" test because he failed to recognize a fundamental right to farman argument raised for the first time in their motion for reconsideration. However, they argue that, even if the "rational basis" standard is applicable, the motion judge should have found that the Highlands Act violated their right to equal protection.
In rejecting plaintiffs' argument that farming is a fundamental right under the New Jersey constitution such that a strict scrutiny test must be applied, the motion judge held:
With regard to the arguments concerning farming being a protected right or a suspect classification, the Court has given plaintiffs every opportunity to cite authority that would demonstrate to this Court that farming as an economic activity is a protected right or a suspect classification even though those arguments could have been raised at the time of the original motion and were not raised.
Plaintiffs have not been able to offer the Court any demonstration by way of legal authority that farming activity is such a protected right or economic or suspect classification.
Despite the historical background of farming it's clear to the Court that the economic activity of farming does not fall within those categories.
We agree with that analysis.
Plaintiffs have cited no constitutional provision, statute, or case that specifically articulates a right to farm of constitutional dimension or that recognizes the status of being a farmer or engaging in farming as a protected, suspect or semi-suspect class. In Gardner v. New Jersey Pinelands Commission, 125 N.J. 193, 220, 593 A.2d 251 (1991), although the plaintiff farmer did not argue that he was a member of "a suspect or semi-suspect class" or that farming was a right of constitutional dimension, as the plaintiffs contend here, the Supreme Court held that the "right at issue[, his right and freedom to use and enjoy his farmland property,[2]] also is not a fundamental right because it involves only plaintiff's ability to use his property in the most profitable or economically-valuable manner, not the right to derive some beneficial use of the property."
*320 That there was, as demonstrated by documents in the record, discussion among State officials in the early 1980s about proposing legislation recognizing such a constitutional right does not support plaintiffs' argument that there is one, particularly when the proposed legislative finding was never enacted.
The draft legislation on which plaintiffs rely was eventually enacted as the Right to Farm Act (RFA), N.J.S.A. 4:1C-1 to -10.4. The Legislature set forth the purposes for enactment of the RFA in its legislative findings, N.J.S.A. 4:1C-2, as follows:
a. The retention of agricultural activities would serve the best interest of all citizens of this State by insuring the numerous social, economic and environmental benefits which accrue from one of the largest industries in the Garden State;
b. Several factors have combined to create a situation wherein the regulations of various State agencies and the ordinances of individual municipalities may unnecessarily constrain essential farm practices;
c. It is necessary to establish a systematic and continuing effort to examine the effect of governmental regulation on the agricultural industry;
d. All State departments and agencies thereof should encourage the maintenance of agricultural production and a positive agricultural business climate;
e. It is the express intention of this act to establish as the policy of this State the protection of commercial farm operations from nuisance action, where recognized methods and techniques of agricultural production are applied, while, at the same time, acknowledging the need to provide a proper balance among the varied and sometimes conflicting interests of all lawful activities in New Jersey.
The RFA protects commercial farmers by preempting municipal and county land use authority over commercial farms and by shielding them from nuisance suits brought by neighbors. N.J.S.A. 4:1C-9, -10; Twp. of Franklin v. Den Hollander, 172 N.J. 147, 149-50, 796 A.2d 874 (2002); Borough of Closter v. Abram Demaree Homestead, Inc., 365 N.J.Super. 338, 347-48, 839 A.2d 110 (App.Div.), certif. denied, 179 N.J. 372, 845 A.2d 1254 (2004). The RFA does not, as was apparently discussed during the early drafting stages, establish, recognize, or make any reference to a constitutionally protected right to farm.
Interestingly, the Highlands Act itself refers to the RFA and sets forth the Legislature's intent to further its purposes through the Highlands Act itself.
The Legislature further finds and declares that there are approximately 110,000 acres of agricultural lands in active production in the New Jersey Highlands; that these lands are important resources of the State that should be preserved; that the agricultural industry in the region is a vital component of the economy, welfare, and cultural landscape of the Garden State; and, that in order to preserve the agricultural industry in the region, it is necessary and important to recognize and reaffirm the goals, purposes, policies, and provisions of the "Right to Farm Act," ... ([N.J.S.A.] 4:1C-1 et seq.) and the protections afforded to farmers thereby.
[N.J.S.A. 13:20-2.]
The Legislature further specified that the Council should act to support the agricultural uses of the area:
In preparing and implementing the regional master plan or any revision thereto, the council shall ensure that the *321 goals, purposes, policies, and provisions of, and the protections afforded to farmers by, the "Right to Farm Act," ... ([N.J.S.A.] 4:1C-1 et seq.), and any rules or regulations adopted pursuant thereto, are recognized and not compromised in any manner.
[N.J.S.A. 13:20-9(c).]
However, there is nothing in the Highlands Act to support an assertion that there exists a constitutional right to farm or that farmers are a protected, suspect or semi-suspect class for constitutional, equal protection purposes.
Moreover, the Highlands Act included other provisions that were expressly meant to benefit farmers. N.J.S.A. 13:20-3 excludes agriculture and horticulture use and development from the definition of "Major Highlands development," which lists types of development that need a Highlands permit. N.J.S.A. 13:20-29(a)(2) provides a means for farms to increase their "agricultural impervious cover" under the supervision of the local soil conservation district. Included among the Council's many powers, duties, and responsibilities, is its direction
[t]o work with the State Agriculture Development Committee and the Garden State Preservation Trust to establish incentives for any landowner in the Highlands Region seeking to preserve land under the farmland preservation program that would be provided in exchange for the landowner agreeing to permanently restrict the amount of impervious surface and agricultural impervious cover on the farm to a maximum of five percent of the total land area of the farm.
[N.J.S.A. 13:20-6(w).]
In addition to failing to support their assertion that farming is a constitutionally protected endeavor or that farmers are a protected, suspect or semi-suspect class, the plaintiffs fail to articulate how the Highlands Act impedes their right or ability to farm or engage in the business of farming. In their brief, they make the following assertion in that regard:
In Appellant's Motion for Reconsideration, the trial court was requested to address the equal protection standards associated with discrimination against farmers as a suspect classification and the related constitutional issue, the right to engage in farming as a livelihood and as a way of life is a fundamental right protected by the Fifth and Fourteenth Amendments to the United States Constitution and Article One of the New Jersey Constitution. By stripping 75% of the equity from their lands, the State of New Jersey through the Highlands Water Protection and Planning Act is depriving farmers and the individual plaintiffs in the preservation area of this right.
That is simply not an articulation of how the Highlands Act prevents plaintiffs from "farming as a livelihood and as a way of life." See also Gardner, supra, 125 N.J. at 210-16, 593 A.2d 251. Indeed, as already noted, the Highlands Act contains provisions that favor rather than disfavor farming.
Like the Gardner case, the present case involves only the plaintiffs' "ability to use [their] property in the most profitable or economically-valuable manner, not the right to derive some beneficial use of the property." Id. at 220, 593 A.2d 251. Additionally, although still in its infancy, a transfer of development rights program (TDR) exists for the Highlands Act pursuant to N.J.S.A. 13:20-13. Consequently, just as the Gardner plaintiff had "at minimum" a right to Pineland Development Credits, similarly plaintiffs here have, at minimum, the opportunity to participate in the Highlands Act's TDR program.
*322 The exemption provisions about which plaintiffs complain may also inure to their benefit, particularly those provisions allowing construction of a single family dwelling on each lot, any improvement to a single family dwelling including an addition, garage, or shed, and harvesting of forest products in accordance with an approved forest management plan. N.J.S.A. 13:20-28(a)(1), (2), (5), (7).
Finally, plaintiffs have the opportunity to seek waivers under the Highlands Act to the extent they consider the Act's impact to constitute a taking of their property. OFP, supra, 395 N.J.Super. at 584-87, 930 A.2d 442.
To the extent plaintiffs assert a diminution in the value of their land, which would appear more directly related to their interest in selling or developing their land rather than farming it, they raise the issue of an unconstitutional taking already decided in OFP, supra, 395 N.J.Super. at 580-85, 930 A.2d 442.
Plaintiffs further contend that the Highlands Act violates their equal protection rights by imposing the most stringent development restrictions upon owners of large tracts of land in the preservation area, apparently assuming that most such owners are farmers. They assert that those landowners have lost seventy-five percent of the equity in their property, while values for owners of small, fully developed lots that are eligible for Highlands Act exemptions under N.J.S.A. 13:20-28 have remained stable or increased. Plaintiffs essentially argue that because their larger tracts of land experience a proportionately greater loss of value from the Highlands Act's development restrictions, the Highlands Act has unfairly targeted larger landowners, such as farmers.
The motion judge, after citing cases referring to a "rational basis" standard for cases involving "economic legislation which does not implicate a fundamental right, a suspect class or a semi-suspect class," held:
In this case the legislative decision to allow development on larger parcels of land only if consistent with the goals and purposes of the Act is certainly consistent with the stated purposes of the Act. That is the protection of the Highland region and its vital natural resources from the consequences of over development.
Additionally the Act permits all owners, whether owners of large or small parcels, to seek the same relief under the Act. The Act also provides all disgruntled owners with administrative remedies.
Based upon the foregoing the Court finds that the defendants are entitled to dismissal of the plaintiffs' equal protection claims in Count II of the complaint.
We agree with his conclusion.
Having determined that there is no constitutionally protected right to farm and that farming is not a protected, suspect or semi-suspect classification, we apply the rational-basis test. Brown, supra, 113 N.J. at 573, 552 A.2d 125. We need discern only a "conceivable rational basis." Greenberg v. Kimmelman, 99 N.J. 552, 563, 494 A.2d 294 (1985). Absent any form of invidious discrimination or suspect classification, "all that the Constitution requires is that the statute be rationally related to the achievement of a legitimate state objective." Drew Assocs. of NJ, LP v. Travisano, 122 N.J. 249, 264, 584 A.2d 807 (1991).
As the Supreme Court held in New Jersey Restaurant Ass'n, Inc. v. Holderman, 24 N.J. 295, 300, 131 A.2d 773 (1957):

*323 The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. [(Citations omitted).] The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, [(citations omitted)], or because of "some substantial consideration of public policy or convenience or the service of the general welfare." De Monaco v. Renton, 18 N.J. 352, 360, 113 A.2d 782 (1955). Hence, it may "stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact." Dominion Hotel, Inc. v. State of Arizona, [249 U.S. 265, 268, 39 S.Ct. 273, 274, 63 L.Ed. 597, 598 (1919)].
See also Drew, supra, 122 N.J. at 264, 584 A.2d 807.
In Greenberg, supra, 99 N.J. at 570, 494 A.2d 294, the Supreme Court upheld the constitutionality of N.J.S.A. 52:13D-17.2, which banned immediate family of State officials who resided with the official from employment in casinos. The Court recognized that the statute treated spouses differently from partners of State officials who cohabitated but did not marry. Greenberg, supra, 99 N.J. at 577, 494 A.2d 294. The Court went on to note:
Although it is arguable that the ban should extend to unmarried persons who live together, the Legislature may address the problem one step at a time. Williamson v. Lee Optical of Okla., [ ] 348 U.S. [483,] 489, 75 S.Ct. [461,] 465, 99 L.Ed. [563,] 573 [(1955)]. Proper classification for equal protection purposes is not a precise science. With the passage of time and the acquisition of further experience, the Legislature may want to reconsider statutory classifications or restrictions. As long as the classifications do not discriminate arbitrarily between persons who are similarly situated, the matter is one of legislative prerogative.
[Ibid.]
See also Williamson v. Lee Optical of Okla., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955) ("[T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.").
The plaintiffs argue that the Highlands Act puts them in an unequal position relative to individuals who are arguably "similarly situated," i.e., owners of relatively small parcels of land, as well as land not in a core area to be protected. As was recognized in Greenberg, however, classifications "are not a precious science." The classifications at issue, which are applicable to owners of relatively large parcels of land in a core protection area, are clearly and rationally related to the Legislature's *324 purpose in protecting the Highlands from "fragmented and [ ] unplanned development" and "the environmental impacts of sprawl development." N.J.S.A. 13:20-2. We will not second-guess the Legislature's determination that this is best done by focusing on larger parcels in what it has found to be the most sensitive area of the Highlands.

D.
Plaintiffs argue that count four of their complaint was erroneously dismissed because the Highlands Act's establishment of a Highlands Region with a core preservation zone is "a legal fiction without scientific basis." They assert that the Highlands land area is distinguishable from the hydrogeologic conditions in the Pinelands, where those conditions warranted regulating the land by establishing a preservation area. For present purposes, we will assume that they are correct. However, they ignore the legislative findings, contained in N.J.S.A. 13:20-2, that express the Legislature's concerns to protect "other exceptional natural resources such as clean air, contiguous forest lands, wetlands, pristine watersheds, and habitat for fauna and flora," as well as "many sites of historic significance."
As the trial court noted, the OFP court addressed a similar argument:
The stated purposes of the Act are not limited to preserving clean drinking water. The Act's purposes also include protection of the "natural resources of the New Jersey Highlands against the environmental impacts of sprawl development[,]... [discouragement of] piecemeal, scattered and inappropriate development, in order to accommodate local and regional growth and economic development in an orderly way ... [and] maintenance of agricultural production and a positive agricultural business climate[.]" N.J.S.A. 13:20-2. Consequently, even if it could be shown that a limitation of development of OFP's property would not serve to preserve clean drinking water, such a limitation still could further the other stated purposes of the Act. Moreover, the Legislature was not required to consider the condition of each individual property within the preservation area in establishing its boundaries, because such boundaries are not required to "be formulated with mathematical perfection." Toms River Affiliates v. Dep't of Envtl. Prot., 140 N.J.Super. 135, 147-48, 355 A.2d 679 (App.Div.), certif. denied, 71 N.J. 345, 364 A.2d 1077 (1976).
[OFP, supra, 395 N.J.Super. at 595-96, 930 A.2d 442.]
The Legislature drew boundaries relating to the Act's overall goals for water and natural resource protection in the Highlands area, and any imprecision in creating those boundaries is not for the courts to second-guess. Accordingly, count four of plaintiffs' complaint was properly dismissed.

E.
We have considered plaintiffs' remaining issues in light of the record and the applicable law, and we are satisfied that none of them is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

III.
In summary, for the reasons set forth above, we affirm the dismissal of plaintiffs' declaratory judgment action as a matter of law, finding that there were no disputed issues of fact raised that would require an evidentiary proceeding.
Affirmed.
NOTES
[1] The Authority was added as a defendant in the amended complaint.
[2] Gardner, supra, 125 N.J. at 211-12, 593 A.2d 251.